May it please the Court, Honorable Counsel, I represent the appellant Stacy Walker, who's the claimant in this case. This is a civil forfeiture prosecution. Summary judgment was granted for the government. The husband of the claimant, Calvin Walker, was prosecuted for defrauding the Beaumont Independent School District. The case resulted in a hung jury. Afterwards, the government decided to, as I submit, ratchet up the pressure on Walker, so they filed a civil forfeiture complaint. They alleged the forfeiture of two annuities worth $3.4 million, a Mercedes and two lots. After the civil forfeiture complaint was filed, the Walkers filed a claim through the same counsel who was Calvin Walker's criminal counsel, filed a claim on the property, filed an answer, and they filed a counterclaim. Importantly, in that pleading, they alleged that it was a community property, especially the two annuities. But that's no surprise, because if you look at the forfeiture complaint that was filed by the government, it specifically shows that the annuities were funded from bank accounts in the name of the Walkers who were married. So it was obvious from the first that the annuities were community property. The case proceeded on, and essentially Calvin Walker entered into a guilty plea with the government. He pleaded guilty not to the fraud charges, but rather to a misdemeanor tax charge and agreed to forfeit his interests in the two annuities. It specifically says the defendant's interests. Then the asset forfeiture case proceeded with the Beaumont School District trying to litigate a claim, which was ultimately denied. That took well over a year. And then the government moved for judgment toward the end of 2013. And at that point, finally, on April the 1st of 2014, there was a hearing. And in that hearing, Ms. Walker, for the first time, made an appearance in court. She was not charged in the criminal case, never made an appearance in the criminal case, didn't even have standing to enter an appearance in the criminal case. But she made the first appearance in her civil forfeiture case, where she was a claimant who had filed an answer in a counterclaim. And at that point, there was a hearing. And the next day is when her criminal counsel, who was representing both of them, withdrew because of the fact that there was a conflict, because she was claiming that she did not agree to the forfeiture of the two annuities. So I submit in this case that there are three provisions that really apply here. One is the Texas Family Code provision, 3.104. And then the two asset forfeiture provisions that are relevant in this case, 983 of Title 18 and Rule G, governing the rules governing forfeitures in REM proceedings. And I agree with the government that the two annuities were sole management community property. And that was because the two annuities were in the name of the husband, Calvin Walker. The 3.104, which I think we both cited in our briefs, both sides, says that just like selling a car, a one spouse, when the name of the property is in one spouse's name, they can deal with that property, sell it, without the... He said, well, when, yeah, or she, but it's in the singular, not they, right? Yes. Or it's a grammatical point, small mind. It is. It's... And the issue here is whether he can deal with it, not if it's in his name, then he can deal with it. Yes, Your Honor. That's clearly the law of the Texas family. Now, let me ask you a question, which I've never known the answer to. And that is, let's assume you've got property in his name. I mean, does that, do they both have to die before that becomes, how do you change that? Well, I think the family code gives you the ability to deal and sell property only in one of the spouse's names, unless someone has noticed, the person buying the property has noticed that the other spouse is not consenting. Now, you could change the name of the title to the property and put the other spouse on it. Once the property, this is, literally, I'm not giving you trouble. I want to know the answer. Once the property is in the husband's name, that's it forever? How does the wife come in and say, well, you're not the world's best manager, and so I want this property in both our names, so I get to have some say over that. Can you do that under Texas law? I think you can. I mean, I'll give you an example. My wife wanted her name on the car title, and we changed it. That was as it happens. But you got, but the person whose name is on the car title has to agree that we're going to let the wife come in now and have her name on it, too? I think that would be the way I'd look at the law. Well, your name is on the car title. That's how you would look at the law. Yeah, I mean, I I might view it differently. Well, I I just want to know what the Texas law is. Once the thing is in concrete, i.e., your name's on the title, how does the wife say, well, you're having a problem with this woman over here, and I want my name on the title, too? Well, I think it's a problem. I don't think there's a clear, what I see is I think there's a risk to the spouse whose name's not on the title that the other spouse could deal with the property. And the protection that is afforded is really, is the, and I think this really answers what I think the concern is, the 3.14 has this provision in there that says if the buyer, so in a sense here the government, if they have notice or constructive notice, and I cite the best definition I can find for notice was that the party should make further inquiry, and I think that's an important distinction here. I don't get it. If they have notice of what? Notice that the other spouse is not consenting to the transfer. Well, so the spouse says, I'm sorry, I don't agree. So I want, I don't agree with this transfer. So then what? If that spouse makes it known to the buyer, then I think the transaction is at risk of being voided eventually. You've got that cited in your brief? But that's not here, though. Well, that's my position is they had notice. Notice involves two. Is it actual notice, which I think this case law says or is it constructive notice even? Constructive notice is essentially they should have known, and I think that applies here. When the counterclaim and answer was filed by Ms. Walker, she made a claim on that property as community property. It put the government on notice, Your Honor. But what's, I mean, you know, it's, I know you're arguing under 3.14, you say that the government had notice of her, quote, joint management. I question Judge King as she was, you know, straight on about the law in a case where, you know, a spouse asserts this. You gave an example, you know, with the cartel, what that's done. So once it's triggered, I mean, that was actual notice. But as to here, we've got these court proceedings going on. Everything is in his name. She had a lawyer, et cetera, et cetera. So where are you saying or in which scenario? I mean, there's no affirmative, at least that I read, no affirmative sort of statement, et cetera, in the way of the example here. You're just saying because when she came into court, she's sitting out there, et cetera, et cetera, that the government had constructive notice of her joint management. When and how are you saying that notice was triggered? It was noticed by the claim and answer that was filed. In the counterclaim. Absolutely, Your Honor. If they hadn't done that, then they probably could have gone through and forfeited. But when she set that out, that answer and counterclaim means something. And why I think it's important because you have to look at 3.14 in connection with the procedural protections that were provided by 983 of Title 18 and also Rule G. And I saw the case from the 11th Circuit that says, you know, it shouldn't be easy to forfeit property. They should be strictly construed for the government. My question, too, was that. Maybe that's the one I didn't look at all the cases you cited. But what's your best Texas case construing this constructive notice of joint management? With the case I cite? Yeah, I mean, what's the best? I mean, I'm looking at the statute and we're looking at the word. As you say, both sides cite 3.104. So in and of itself, it's not the answer. I'm trying to get not what exact case with a counterclaim like this. I'm just trying to get at. I hear your argument. I'm trying to see what is your best Texas case that would inform us in a circumstance where there's not, you know, the affirmative raising the hand by the spouse saying it, but some constructive notice by the third party. Because the point of 3.104 is protecting third parties, right? Yes, Your Honor. So what's your best case that says in the absence of some, you know, affirmative statement by the other spouse, I want my name on the car title? Here, at least I didn't see any of that. So what? Just because the government should have had notice from the mere language in the counterclaim. I guess that's what you are. That's exactly right. Okay. All right. And I think it was more than just say, hey, I'm here. She was taking advantage, invoking the protections of Title 18983 and Rule G that places the whole, the forfeitability of the property at issue. It's specific. But he got the money, stealing it from the school district. They indict him, you know, it's culpable, it's community property. So does she want part of that action, too? Or just, huh? I mean, does she want part of that action, the crime, the theft? You're the former U.S. attorney, and I know that. So, you know, you didn't have any stroke with that car title at home, even though you're a former U.S. attorney. But on the serious side, I'm saying, okay, they allege he stole the money, quote, and bought these assets. So we've got this crime sitting out here. She's sitting silent. Don't want no part of that. But yet you say the counterclaim, but I do want my part, should put the government on notice in terms of the joint mandate. Is that what you're saying? Your Honor, I'm going to respectfully disagree. Somewhere in there was a serious question. I'm going to respectfully disagree on one point. Okay. There's no evidence that shows he's committed theft. There's been allegations. All right, okay. And he hasn't. I stand corrected. And when he, when she put that, used the procedural protections of 983 and Rule G, she set that in issue. And they can't ignore that. They should have made further inquiry. But they didn't. Went to a jury trial. Pardon me? There was a jury trial on the charges, right? That he stole the money. It was a hung jury. It was a hung jury. From the theft, et cetera. I understand. No verdict. So they come back and then he pleads. And so it's this whole scenario, you know, that's kind of there. And then we get to where we're here. So I'm just having a little bit of trouble with this constructive notice in the context of this whole milieu of how this went down and what the government is alleging these annuities came from, the theft money, et cetera. Well, we allege it came from hard-earned money that Walker made. And I think what happened here, and I'll conclude by saying I think they ran roughshod over her. She was an innocent spouse. Nobody's claimed she's ever done anything. They ran roughshod over her interests, community property interests, and just guessed or assumed that she was going along with it because she had the same lawyer. When the conflict became apparent, when she made her first appearance in court, then Mr. DeGaran withdrew, and she should be entitled to go and litigate her claim. And it's not just chump change. It's $1.7 million, and it's important to her. I didn't mean to cut you off from your argument. You still have time on the clock. I didn't mean to send you if you wanted, but I didn't mean to send you off in the town if you made your argument. I'll just conclude by saying I cite provisions from the Department of Justice manual, and what it shows is I think it's the better practice, and I think it would set a bad precedent to disassume a spouse who has made a valid claim and counterclaim for community property is not required to at least have a signature or something or a hay or something on the record in a case where she has standing, and they didn't give her that shot. It's the better practice to do it, and it normally happens. Every case I've ever had, and I've had one in each case. Isn't that something that we as an Erie court should be doing or one of the Texas courts saying that? Well, I think— I mean, we're sitting in—right? I mean, we're an Erie court. I think it deals with the interpretation of 983 and Rule G that when you have an innocent spouse, there should be some kind of something on the record, or really what I'm saying is you shouldn't just affirm a case where they didn't have that because I think it makes the government less vigilant in ensuring that the innocent spouse's rights are perfected. The only thing she had to do was sign it. It was an easy act to do, and they didn't do it. That's why you have—that's why people sign contracts, why you require lawyers to sign pleadings. It's important. This is a ceremonial act. All right. Thank you, Mr. Wallace. I appreciate your answers and your briefing. All right. From the government, Mr. Wallace. Thank you, Your Honor. Bob Rawls for the United States. Well, to hear Ms. Walker's counsel's summation there that we ran roughshod over her, she was represented by an attorney, and not just any attorney, a highly experienced attorney. It was also his attorney, right? Yes, Your Honor, and that was her choice. But he was a highly experienced attorney. When the claim was filed, he filed it on behalf of her as her attorney and also as Mr. Walker's attorney in the civil forfeiture proceeding. The government dealt with her attorney. I don't know how to be more clear and say that at any time she objected to the transfer of these annuities. She had an attorney to represent her and say Ms. Walker objects to her half, if she had a half interest in these annuities, she objects to the transfer, and that could have been addressed at that time at any point during the civil forfeiture proceedings. It never happened. Her claim was that, hey, this is community property. Well, the government doesn't dispute that it's community property, but it's sole management community property, and that's not something the government did. This is something the Walkers did well before the criminal indictment was brought where there was forfeiture allegations for these annuities. Well, is there any notion in Texas community property law of the spouse, like Ms. Walker, having some type of vested residual interest even though, in other words, it distinguishes between the right of the husband to deal with the property, but he's supposed to be dealing with it for the benefit of the community. Is there any notion of protection in the law for the spouse in this type of situation? Well, this is exactly kind of the question that Judge King asked. The Walkers themselves put this property in Mr. Walker's name not just on one occasion but two occasions because there are two separate annuities purchased on two separate dates. Each time it was titled in Mr. Walker's name only. He had the authority at any time as the owner of that annuity to put it in both spouses' names, but he never did. She was listed merely as a beneficiary. And so to answer Judge King's earlier question, well, what does a spouse do? Well, in a case like this, she could have written to the insurance company and said, hey, we object to, I object to any transfer by Mr. Walker of these annuities. Let me know. In the case of a card title, she might do a UCC filing. In the case of a deed of trust on a piece of property, again, some sort of notice filed in the land records where a title search might say, hey, there's a spouse out here that objects. But this isn't an ordinary commercial dealing with this property. This property is actually being taken by the government. Yes, Your Honor. Why shouldn't that be a different situation when the government actually, if it were a house in his name and you expropriated it, she would not be protected just because it's in his name? No, Your Honor. She is protected. We sent her notice. She filed a claim. She hired a lawyer. The lawyer represented her. All we did was deal with her through her lawyer. At any time, all they had to do was give us notice. In fact, So this is good because the lawyer also, by the way, is not judgment-proof. So there you go. Well, that's for them to decide, and they have experience in dealing with attorneys, obviously. We have a law that's probably different, and I'm probably off the track here, and I didn't have time to go check it out. But, you know, we had a case in Louisiana involving George Rodriguez's blue dogs, and he copyrighted his blue dogs, but they were community property, I think we ended up holding, even though he had the authority under the copyright law to deal with the blue dogs and license them, still there was a residual interest of his wife, former wife, protected by the community property laws of Louisiana. Of course, that's a different state and different laws, but I just wondered if there's nothing like that in Texas that would help a situation like this, help a spouse in a situation like this. Well, I think as most Louisiana lawyers would be aware, any sort of land transaction, there's so much holdover from forced airship that you're almost always on notice in dealing with land to do an incredibly good title search. But here, the government dealt with Ms. Walker's attorney. She was represented by a lawyer, and so it was incumbent on her to give us some notice, and even to the court, to give the court notice during this civil forfeiture proceeding to say, I object to this transfer. He doesn't, you know, I mean, I think he, well, he has to. I mean, he doesn't take on the issue, no actual notice, you know, saying it. Ms. Roper is arguing, you know, this constructive notice, part of 3.104B. So he's urging that the government had constructive notice at least vis-a-vis the counterclaim that was filed. I didn't hear him arguing that, you know, she did what you said. You know, she obviously didn't do what she could have done in terms of that sense, but he's arguing that in B, the constructive notice that in the counterclaim itself filed by her lawyer, that the nature of the counterclaim should be the constructive notice in this instance. So I think that's what he's saying. I'm not trying to incur. He'll correct me if I'm wrong. So what's the government's take on that? After her counterclaim was filed, the government negotiated with her attorney, negotiated with her attorney to resolve the civil forfeiture, and that's what the government did. The government reached a resolution with Mr. Walker and Mrs. Walker through her attorney. And after Mr. Walker's sentencing, the government then proceeded with its agreement and returned to Mrs. Walker over $500,000 in negotiable checks, a car, and some real property that had also been seized or had a list of pendants put on. At no point during this entire process do they ever give any kind of notice that, hey, we don't really agree with this. And the case they cite, the Portland case, in that case the spouse actually took some affirmative action by telling the bank, hey, I don't agree to sign a promissory note or a deed of trust. And so the court there found that not only was there notice, there was probably knowledge, but at a minimum there was certainly notice. Now, in this case, she's represented by a lawyer for well over a year and a half during this process, and there are a number of hearings in this civil procedure, the civil forfeiture proceedings. There's a claim by the Beaumont Independent School District saying we want part of these annuities that y'all are holding. And she never filed or through her attorney ever said, hey, I don't consent to the transfer of this to BISD or even to the government, but she didn't. In fact, her own attorney in one of those evidentiary hearings on the Beaumont Independent School District claim stated emphatically, we also accede to the fact that the annuities are to be forfeited. It doesn't get any more clear than that on the record and in open court. Again, there were numerous orders entered by the district court here saying, hey, this civil forfeiture is taking so long. Let's have some closing. I'm going to enter an order for closing documents on this case to be filed. Never a pleading on behalf of a miserous walker saying I object to this. Let me ask you the question I ask opposing counsel, and that is just as a matter of Texas law, once the property winds up, the car title, in the husband's name, what can the wife do to say, I don't agree that he should be any longer the joint manager of this property. I want it to be, what do you call it? I want to be a title owner. Right. What do you do under Texas law, never mind the scene you're in? In a perfect world under Texas law, how does the wife be heard on that? The only thing this counsel believes someone could do is what I suggested earlier. You have to have some sort of affirmative filing such as a UCC filing, maybe something in the land records. And the reason why the family code is like that is not to protect the other spouse. That's what the case law says. It's to protect third parties like the government in this case because they're dealing with titled property. And they take whatever reasonable steps that can be taken to protect their interest so that they take this property clearly and cleanly. And in this case, the government did that. It sent Mrs. Walker notice. She hired a lawyer, and we dealt with her lawyer. And it was he who negotiated this overall agreement. And the agreement does benefit Mrs. Walker. The end result of these forfeited annuities is it pays her civil tax liabilities, which you can imagine are going to be enormous because the criminal restitution, as the record shows, just the criminal restitution for the husband was over $600,000. So the government designed this agreement so that the Walkers would not have these annuities forfeited and then have a huge civil tax liability out there. It would be like double punishment. So this agreement was designed to at least pay any civil tax liability that would have come about as a result of having all this income represented by the annuities. It was never reported. And that's why Mr. Walker entered a plea for failure to pay taxes. And so there's an enormous civil tax liability out there for the monies represented by these annuities. And so the government is allowing the annuities to be used to pay off that civil tax liability. Whatever is remaining will then go to the forfeiture fund. But the end result is it was designed by her attorney. He negotiated this. And so this is not someone being run over roughshod and, you know, without something being done behind her back. She was represented by a very capable attorney who actually cut a very savvy deal. Did she ever sign anything here that said, I agree with all this? No, Your Honor, she did not. And therein for the future lies what you need to do, okay? Yes, Your Honor. The message from today, better get the wife to sign. Yes, Your Honor. And that would have been the better practice. However, we were dealing with her attorney. And in this counsel's experience, maybe it's different from Mr. Roper's, but this is exactly the type of situation that we've probably done this hundreds of times and never had an issue like this. But here in this case, even the court found her claim that she didn't have notice. The district court's term was incredulous. And given the number of hearings and pleadings done in this civil forfeiture case, the government concurs with that finding by the court. It's just incredulous she didn't have notice. What it is. Was she present for most of the proceedings or did her lawyer only, you know, like I got a lawyer and she wasn't there? The district court. I'm not saying that answers it, but I'm just curious. Was she present during the proceedings? Yes, Your Honor. The district court actually entered as part of its order that she was present at almost all of the hearings. And so this was not done in a vacuum. Any conflict here was probably a conflict of convenience. Let's take another run at the annuities after we've already gotten the benefit of the bargain. He got a great plea agreement. She got property returned back to her. A lot of cash, a car, and some land. And, again, the government simply seeks to enforce its bargain. And under the McCloy case, we're entitled to rely on the fact that these annuities were in her name. And if that was all we did. You said her name. Oh, his name. And if that was all we had to rely on, that alone under the statute, the Family Code 3.104, that would be enough for the government to rely on because we're a third party. It was titled in his name. We're entitled to rely on the presumption that he had the authority to deal with the property. And that's what the statute and that's what the case law behind it says, is that it operates for the benefit of the third party, not that innocent spouse. But in this case, the government did one further. It noticed her. She got an attorney. We dealt with her attorney. You keep saying that, her attorney, but that was Mr. DeGaran, who was also his attorney. She didn't have an independent attorney. Well, that's. . . I mean, as far as the record shows. But, no, he filed a claim in the civil forfeiture on her behalf. Filed one for her and filed one for him. She was represented in the civil forfeiture by him, and that's why the government dealt with him. And that's what the court assumed too, and rightfully so. And, again, I go back to the Portland case where, again, there was an innocent spouse and she actually put the bank on notice. Well, here, she had an attorney and she never put the government on notice. I think the government was, in its brief, we say, hey, if her own attorney didn't know she object, how are we supposed to know? And that's true, and that's what the statute is designed to protect, the third party. It's not for the protection of the other spouse, unfortunately. We didn't write that statute. That's the Texas statute, and that's kind of what we have to deal with as Texas law. With respect to the cash that she got, the car, the land, et cetera, those were assets not connected with the annuities. That was other assets ahead, is that right? That's correct. Everything in the civil forfeiture was also listed in the criminal forfeiture notice in the indictment. The civil forfeiture mirrored it. And, of course, there had to be a civil forfeiture in this case because Mr. Walker pled to a tax count, and there's no forfeiture authority under the tax code under Title 26 for us to do a criminal forfeiture in that case. With respect to those, the money, the cash, et cetera, that she got, did she sign documents in connection with receipt of those or the signatures or whatever done by Mr. Daguerre? No. She actually took possession of the negotiable checks herself. I had her sign a receipt. It's in the record of the civil forfeiture proceedings. So she was quite aware that she was receiving property back that she had filed a claim on and got them back. And so the government believes it dealt extremely fairly with the Walkers, including Mrs. Walker. Let me do a quick recap on the numbers. The total of the annuities to start with was how much? $3.4 million. All right. And the forfeiture was how much? It's actually the two annuities, which total $3.4 million, minus $200,000 to be returned to the Walkers. Okay. I thought I read he, the husband, got some money back, right? $200,000 once the forfeiture is done. After all the forfeitures, the taxes, et cetera. Well, he gets that off the top. Okay, off the top. All right. So he gets clear money. All right. Okay. And her package externally of that was roughly how much? Well, what was returned to the Walkers, including Mrs. Walker, was $520,000 in negotiable checks, a Mercedes, and the government released a list pendants on a piece of property, some lakefront property in Port Arthur. Okay. All right. All right. I'm just trying to get clear in my head. Well, thank you, Your Honors. If there are no further questions, the government simply asks that the court here find that the district court was correct in entering its order granting summary judgment in this case. There's no facts to be determined here. The annuities were titled in Mr. Walker's name. He had the authority to deal with them. That's one fact. Second fact, there was never any notice provided to the government that she objected to it, and she was represented by counsel, and for over a year and a half while this was pending, there was never any affirmative notice. That's the second fact. Nothing else did the district court need to find. Thank you. Thank you, Mr. Ross. Back to you, Mr. Roper. Well, I disagree with a lot of what the government's counsel says. First off, the checks weren't the subject of the civil forfeiture. They were returned, and he asked her to go pick them up. So I don't think that's true. The amount of tax liability, I think he suggested that was a benefit given to Mrs. Walker. He, Mr. Ross, asked her to go pick up the checks. And this notion that there's this huge amount of tax liability, we don't know what that is. That's not in the record. That's purely speculative. There is some taxes owed. We don't know what that is. Well, whatever. They're not owed anymore, right? Well. They both have been released from, I mean, there aren't, that's all over and done with, isn't it? Now, there's a tax case pending. There's still a tax case. There's still a tax case pending in tax court over this issue. The government's trying to get additional taxes from both the Walkers, and that's still pending in tax court, Your Honor. I don't think that's in the record, but that's what happened. And Mr. Ross suggested, listen to me, I think there's been 15 hearings in this case, Mrs. Walker lurking at the back, waiting, sitting on her hands. That's not the case. There was one hearing, and it was when Mr. DeGaran made that comment that Mr. Ross cites, that was the very day before he has to withdraw because she wants to make a claim. So when she came into court, taking advantage of the protections of 983 and Rule G, to come into court and litigate this issue, that was the issue was squarely faced. That was the first time it was really faced by her, and really I'll just have to take a little shot at Mr. DeGaran. I've had cases with him as co-counsel. He's one of the finest lawyers in the world. But he was on notice too, and that's the problems when you're dealing with joint representation of a husband and wife. It is fraught with peril when you do that. And frankly, when she came into court and at that point figured out what was going on, he, as he says in his pleading, he withdrew. He figured out there was a conflict and he withdrew. And at that point, he and the government knew that she had made a claim in the proceeding. What else could she have done? I guess she could have stood up in the criminal case and screamed or did a high sign or something, but she wouldn't even party. She didn't even have standing in the criminal case. She's a completely innocent spouse. So I think 3.14, I disagree with what's been said, that that does not provide protection to spouses that have community property, that the title is not in their name, because they set up this enhanced standard, Your Honors, to deal not only with actual notice but construction notice. They have that higher standard to protect community property interests. And you've got to read that in tandem with these two provisions of the asset forfeiture statute. And you've got to remember the government has the burden of proof here. And I cite this case from the Eleventh Circuit, and it says it's not just a procedural rule. It should be heavier for the government because forfeitures are not favored. Strict compliance with the letter of the law by those seeking the forfeiture must be required. And what does Texas law say? It says you should make further inquiry. That never happened. They just assumed she was going along with it. $1.7 million, and they never took one action. And I disagree with Ms. Rawls every time. And I had one in Plano in the same district where you want to forfeit to settle a case, you add a signature line and an administrative agreement to make sure the spouse signs off to make sure an innocent spouse's interests are protected. That's the way the Department of Justice suggests it's being done. That's the way I've always dealt with it. And you just don't assume it has been done. Let me ask you a question. They settled up the civil tax liabilities here? Well, that's an issue. And that came up in this hearing that Ms. Rawls is referring to, the one that Ms. Walker actually appeared. I think there was a question about what the tax liability was. They thought it was $661,000. But the government and Ms. Walker, that was what was agreed to, and that was in the judgment in the criminal case. Well, now what? Well, the government has decided to double down. And your client says, well, I don't agree with this whole taking of the annuity, so what do we do? Do we unwind the whole civil tax settlement? Probably her position is it's community property, and she gets half of it. Does she have half? Do we reinstate the tax liabilities? Well, no. I think you follow the terms of the plea agreement are even an issue in this case. The question is, should a summary judgment have been granted, all the court should do is reverse the decision forfeiting her interests and remand for trial on the merits to see if the government can prove that it's proceeds of fraud. That's what should happen. And the tax case involving Ms. Walker, that in the criminal case has been dealt with. All right, Mr. Roper. Thank you, Your Honor. Thank you. Appreciate counsel on both sides in this case.